# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **ELISA RUSSELL,** )  | |
|     **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 4:20-CV-00101-CLM** |
| ) | |
| **ANDREW SAUL,** ) | |
| **Commissioner of the Social** ) | |
| **Security Administration,** ) | |
|     **Defendant.** ) | |

## **MEMORANDUM OPINION**

Elisa Russell seeks disability, disability insurance, and Supplemental Security Income ("SSI") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Russell's application in an opinion written by an Administrative Law Judge ("ALJ"). Russell argues: (1) that the ALJ should have afforded more weight to the opinion of Dr. June Nichols, an examining consultative psychologist, and (2) that substantial evidence does not support the ALJ's decision.

As detailed below, the ALJ applied the correct legal standards and substantial evidence supports her decision. So the court will **AFFIRM** the SSA's denial of benefits.

I.  **Statement of the Case**

   A.  **Russell's Disability, as told to the ALJ**

Russell was 49 years old at the time of the ALJ's decision. R. 207, 25. Russell did not graduate high school, and while in school, she attended special education classes. R. 78, 259. Russell's last job was as a tender grader. R.71.

At the ALJ hearing, Russell testified that she goes to therapy and takes medication for mental health problems. R.73. Russell also testified that she struggles with agoraphobia, has panic attacks, and sometimes has thoughts of killing herself and others. R. 79–81.

Russell relies on her family to make sure that she bathes and gets dressed. R. 76. And she spends much of the day in bed. R. 77. But she does go to church with her cousin. *Id.*

   B.  **Determining Disability**

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

|  | The 5-Step Test | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |

| | *Determine Residual Functional Capacity* | |
|---|---|---|
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5). As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis. The intermediate step of determining Russell's residual functional capacity is the most important step here, as all of Russell's challenges flow from the ALJ's decision at this juncture.

### C.  Russell's Application and the ALJ's Decision

The SSA reviews applications for disability benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Russell applied for disability insurance benefits, a period of disability, and SSI in December 2015, claiming that she was unable to work because of various

3

ailments, including carpal tunnel syndrome, hypertension, schizoaffective disorder, depression, and borderline intellectual functioning. After receiving an initial denial in September 2016, Russell requested a hearing, which the ALJ conducted in September 2018. The ALJ ultimately issued an opinion denying Russell's claims in January 2019. R. 25–39.

At Step 1, the ALJ determined that Russell was not engaged in substantial gainful activity and thus her claims would progress to Step 2. R. 31.

At Step 2, the ALJ determined that Russell suffered from the following severe impairments: schizoaffective disorder, depression, and a history of borderline intellectual functioning. R. 31.

At Step 3, the ALJ found that none of Russell's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. R. 32–34. Thus, the ALJ next had to determine Russell's residual functional capacity.

The ALJ determined that Russell had the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations:

- Russell can perform only simple routine tasks involving simple, work-related decisions.

- Russell can tolerate only occasional contact with coworkers and supervisors, meaning she can work close to others but not in a team position.

- Russell can tolerate only occasional contact with the public.

R. 34.

At Step 4, the ALJ found that Russell could not perform her past relevant work. R. 37. At Step 5, the ALJ determined that Russell could perform jobs, such as kitchen helper, laundry folder, and garment folder, that exist in significant numbers in the national economy and thus Russell was not disabled under the Social Security Act. R. 38–39.

Russell requested an Appeals Council review of the ALJ's decision. R. 1–6. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II.     Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such

relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III. Legal Analysis

Russell makes two arguments for why the ALJ erred in finding her not disabled.[1] First, Russell argues that the ALJ improperly rejected the opinion of Dr. Nichols, a consultative examiner, when assessing her residual functional capacity. Second, Russell asserts that the ALJ's decision is not supported by substantial evidence. The court addresses each in turn.

### A.  The ALJ properly evaluated Dr. Nichols's opinion evidence.

Russell's first argument centers on the opinion evidence offered by Dr. Nichols, a consultative psychologist who examined Russell in October 2018. R. 850. Based on her examination of Russell, Dr. Nichols determined that Russell would be unable to understand, remember, and carry out complex instructions but could manage simple ones. R. 853. She also found that Russell would have a moderate limitation in interacting appropriately with co-workers, supervisors, and the public.

---

[1] In the "History of Claim" section of her brief, Russell complains that the Appeals Council failed to consider treatment records from the CED Mental Health Center. Doc. 8 at 2–4. But both the "Error of Laws" and "Argument" section of Russell's initial brief fail to mention the Appeals Council. *See id.* at 1, 17–25. Nor does Russell's reply brief respond to the Commissioner's argument that she has waived any argument related to the evidence allegedly submitted to the Appeals Council. *See* Doc. 11. So the court finds any asserted Appeals Council argument waived. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

R. 848, 853. Finally, Dr. Nichols found that Russell had a marked limitation in the ability to respond to work-related changes. *Id.* In assessing Russell's residual functional capacity, the ALJ afforded Dr. Nichols's opinion little weight. Russell makes three arguments for why this was in error.

    1. <u>"Some measure of clarity" lacking</u>: Russell first argues that the ALJ failed to provide "some measure of clarity" for why she gave Dr. Nichols's opinion little weight. An ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Thus, "when the ALJ fails to state with at least some measure of clarity the grounds for his decision," it is inappropriate to affirm "simply because some rationale might have supported the ALJ's conclusion." *Id.* (quotations and citations omitted).

    Here, the ALJ explained that she had "considered and gives little weight to the October 2018 opinion of [Dr.] Nichols." R.37. The ALJ then stated that the record supported Dr. Nichols's opinion that Russell had a moderate limitation in interacting with others, so she accommodated this limitation in the residual functional capacity assessment. *Id.* But the ALJ found that Dr. Nichols's determination that Russell had marked problems adjusting to work-related changes contradicted Russell's medical records, which "repeatedly note[ ] normal findings

7

with regard to alertness and orientation, a normal mood and affect, and normal behavior." *Id.* (citing Exhibits B4F, B6F, B7F, B8F, B10F, and B12F).

The ALJ's explanation for assigning Dr. Nichols's opinion little weight provides enough particularity to understand the grounds for her decision. So the court finds that the ALJ met the Eleventh Circuit's requirement that she provide "some measure of clarity" for why she assigned Dr. Nichols's opinion little weight.

2. "Degree of suspicion" standard should apply: Russell next asks the court to apply a "degree of suspicion" standard to the ALJ's refusal to credit Dr. Nichols's opinion. In *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995), the Seventh Circuit treated with "a degree of suspicion" the ALJ's decision to reject the testimony of a consultative psychiatrist, who provided the only medical evidence of the claimant's mental health. Because the psychiatrist was the only disinterested expert to discuss the claimant's mental health, the Seventh Circuit determined that his testimony was entitled to considerable, although not conclusive, weight. *See id.*

The Eleventh Circuit has declined to apply the "degree of suspicion" standard to the testimony of consultative examiners. Instead, the court has found *Wilder* distinguishable when (a) the record contained multiple medical opinions about the relevant issue, *Arnold v. Soc. Sec. Admin. Comm'r*, 724 F. App'x 772, 779 n.3 (11th Cir. 2018), and (b) the ALJ did not entirely reject a psychologist's opinion but instead assigned it little weight, *Bush v. Soc. Sec. Admin., Comm'r*, 770 F. App'x

490–91 (11th Cir. 2019). But some district courts within this Circuit have applied the "degree of suspicion" standard to facts indistinguishable from those in *Wilder* (*i.e.*, the ALJ assigned no weight to the testimony of the only mental health professionals to offer an opinion on the claimant's condition). *See, e.g.*, *Stone v. Saul*, Case No. 4:18-cv-1207-GMB, 2019 WL 4491509, at *7 (N.D. Ala. Sept. 18, 2019).

For two reasons, this case is distinguishable from *Wilder*. First, unlike in *Wilder*, the ALJ assigned Dr. Nichols's opinion little, rather than no, weight. In fact, the ALJ agreed that the medical evidence supported Dr. Nichols's finding that Russell had a moderate limitation in interacting with others and accommodated this finding when she assessed Russell's residual functional capacity.

Second, Dr. Nichols's opinion is not the only medical evidence from a mental health professional in the record. Instead, the record also contains opinion evidence from Dr. Fleming, a neuropsychologist who examined Russell in March 2016 and whose opinion the ALJ assigned great weight. R. 555–58, 36. Dr. Fleming found that Russell had adequate immediate recall, adequate recent memory, and an appropriate affect. R. 557. But he concluded that Russell had deficits in recall of digits, general fund of information, abstraction abilities, and judgment and insight. *Id.* Based on his evaluation of Russell, Dr. Fleming determined that Russell "is capable of responding appropriately to supervision, coworkers, and work pressures

in a work setting." R. 558. Because Dr. Nichols's opinion is not the only medical evidence about Russell's mental health in the record, the court declines to apply a "degree of suspicion" to the ALJ's decision to afford her opinion little weight. *See Jackson v. Soc. Sec. Admin., Comm'r*, 779 F. App'x 681, 685 (11th Cir. 2019).

So the court turns to consider the ALJ's evaluation of Dr. Nichols's opinion evidence under the standards that the Eleventh Circuit typically applies to opinion evidence from consultative examiners. Unlike opinion evidence from treating physicians, the opinion of a one-time consultative examiner is not entitled to deference. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). And an "ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). So the court finds no legal error in the ALJ's evaluation of Dr. Nichols's statements. And having reviewed the contrary medical evidence cited by the ALJ, including the opinion evidence from Dr. Fleming, the court determines that substantial evidence supports the ALJ's decision to afford Dr. Nichols's opinion little weight.

3. <u>ALJ substituted her judgment for that of Dr. Nichols</u>: Finally, Russell argues that the ALJ improperly substituted her judgment for that of Dr. Nichols. "[T]he ALJ may not make medical findings herself." *Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 543 (11th Cir. 2016). But it is the role of an ALJ to resolve conflicting medical evidence. *See Watson v. Heckler*, 738 F.2d 1169, 1172 (11th Cir.

1984). Here, the ALJ did not take on the role of a physician. Instead, the ALJ resolved conflicting opinion evidence by assigning great weight to Dr. Fleming's opinion and only little weight to Dr. Nichols's opinion. So Russell's argument that the ALJ improperly substituted her judgment for that of Dr. Nichols's judgment fails.

\* \* \*

In summary, the ALJ did not have to afford great weight to Dr. Nichols's opinion. And substantial evidence supports the ALJ's decision to assign Dr. Nichols's opinion only little weight. So the court finds that the ALJ properly evaluated Dr. Nichols's opinion evidence.

### B. Substantial evidence supports the ALJ's decision.

Russell next argues that the ALJ's decision lacks the support of substantial evidence. In support of this argument, Russell points out that: (1) she was in special education classes, (2) she dropped out of high school, (3) she scored 59 on an IQ test, and (4) Dr. Nichols found that Russell would have marked problems adjusting to work-related changes. Russell has failed to show that this evidence, either individually or combined, compels the conclusion that she is disabled. After reviewing the entire record, the court determines that a reasonable person viewing the record evidence could have reached the same conclusions as the ALJ. So substantial evidence supports the ALJ's decision. *Crawford*, 363 F.3d at 1158.

## IV. Conclusion

In summary, the court has reviewed the parties' briefs, the ALJ's findings, and the record evidence and finds that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. So the SSA's denial of benefits is due to be **AFFIRMED**. The court will enter a separate final order that closes this case.

**DONE** this November 30, 2020.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE